UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __9/29/2020____

BERNSTEIN, ET AL.,

       **Plaintiffs,**

-against-

CENGAGE LEARNING, INC.,

       **Defendant.**

1:19-cv-07541 (ALC) (SLC)

( **OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

  Defendant Cengage Learning, Inc. ("Cengage") moves to dismiss Plaintiffs' complaint for breach of contract and implied covenant of good faith and fair dealing pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike the class allegations in the complaint pursuant to Federal Rule of Civil Procedure 12(f). For the reasons that follow, the Court GRANTS Defendant's motion to dismiss in part and DENIES Defendants' motion to strike class allegations.

BACKGROUND

  This matter arises from publishing contracts between Plaintiffs, academics that author textbooks, and Cengage, a Delaware corporation that publishes, sells, and distributes these textbooks. At issue are the publishing contracts for three titles: *Introduction to Psychology*, also sold as *Psychology: Foundations and Frontiers* ("*Psychology*"), *Essentials of Psychology* ("*Essentials*") and *Law, Ethics and Responsibility: The American Legal Environment*, sold as *Law and Ethics in the Business Environment* ("*Law and Ethics*"). Plaintiffs Douglas Bernstein[1], Elaine

---

[1] Professor Douglas Bernstein is a co-author of *Psychology* and *Essentials*. He entered into an agreement dated June 2, 1983 with Cengage through its predecessor-in-interest Houghton Mifflin Company ("Houghton Mifflin") for *Psychology* (the "*Psychology* Agreement"). He also entered into an agreement dated December 27, 1996 with

1

Ingulli, Terry Halbert[2], Edward Roy[3], Louis Penner[4], and Ross Parke[5] claim, on behalf of themselves and others similarly situated, that Cengage has breached the publishing agreements for *Psychology*, *Essentials*, and *Law and Ethics* with the royalty regime they have in place for two digital products, MindTap and Cengage Unlimited.

MindTap is an electronic platform through which a student has access to an electronic version of a student textbook, along with homework, quizzes, tests, and multimedia materials. MindTap also provides feedback and analytics for instructors and students. To determine royalties paid to authors from sales of this product, Cengage allocates the revenue it receives from a sale of MindTap to the two components of MindTap: the textbook, on which it pays royalties, and the ancillary materials (tests, study guides, exercises), on which it does not typically pay royalties. The percentage allocated as royalty-bearing (*i.e.*, the share of revenue attributed to the authors), which Cengage terms the "Digital Royalty Allocation" or DRA, ranges from 50% to 100% for a given MindTap title. Compl. ¶¶ 36-37.

---

Cengage through its predecessor-in-interest Houghton Mifflin for *Essentials* (the "*Essentials* Agreement"). Professor Bernstein resides in Florida.

[2] Professors Elaine Ingulli and Terry Halbert are co-authors of *Law and Ethics*. Professors Ingulli and Halbert entered into an agreement dated April 8, 1988 with Cengage through its predecessor-in-interest West Education Publishing for *Law and Ethics* (the "*Law and Ethics* Agreement"). Professor Ingulli resides in New Jersey and Professor Halbert resides in Pennsylvania.

[3] Professor Edward Roy is a co-author of *Psychology* and *Essentials*. Professor Roy entered into the *Psychology* Agreement with Cengage, through its predecessor-in interest Houghton Mifflin, on June 2, 1983. Professor Roy entered into the *Essentials* Agreement with Cengage, through its predecessor-in-interest Houghton Mifflin, on December 27, 1996. Professor Roy resides in Illinois.

[4] Professor Louis Penner is a co-author of *Psychology* and *Essentials*, beginning with the Second Edition of the work. Professor Penner entered into the *Psychology* Agreement with Cengage, through its predecessor-in-interest Houghton Mifflin, on March 26, 1998, when he was added as a co-author by amendment to the *Psychology* Agreement. Professor Penner entered into the *Essentials* Agreement with Cengage, through its predecessor-in-interest Houghton Mifflin, on October 18, 2000, when he was added as a co-author of *Essentials* by amendment to the *Essentials* Agreement. Professor Penner resides in Michigan.

[5] Ross Parke is the personal representative of the Estate of Alison Clarke-Stewart, which is the successor-in-interest of the rights and obligations of the deceased Professor Alison Clarke-Stewart. Professor Clarke-Stewart was a co-author of *Essentials*. Professor Clarke-Stewart entered into the *Essentials* Agreement on December 27, 1996, and the Estate of Alison Clarke-Stewart is Professor Clarke-Stewart's successor-in-interest under the *Essentials* Agreement. Professor Clarke-Stewart resided in California.

Cengage Unlimited is a subscription service for digital higher education materials. A subscription provides access to most of Cengage's electronic catalog for a flat, per-semester fee. The per-semester fee gives the subscriber access to electronic versions of all textbooks within the Unlimited platform. Unlimited subscribers also have the option of renting a paper textbook at an additional per-book fee. To calculate royalties on this product, Cengage allocates the entirety of the net revenue received from subscription fees among all of the authors whose works are available and utilized/accessed during the relevant royalty period. Compl. ¶¶ 8, 41. It does this, first, by allocating that revenue among three Revenue Pools—courseware (*e.g.*, MindTap), e-books, and print rentals—based on Cengage's assessment, confirmed by the record of actual customer usage, of the relative contribution each of these types of content makes to driving Cengage Unlimited sales. ECF No. 40, "Mot.", at 6.

The publishing agreements for *Psychology*, *Essentials* and *Law and Ethics* each include a term that sets royalties for sales of the "Work", which is defined as the title itself. Specifically:

- *Psychology*: "**On all sales of the Work** by the Publisher, other than Foreign Sales, Special Sales, and the disposition of Subsidiary Rights, as set forth in Paragraphs 10, 11, and 12 herein, **the Publisher shall pay the Author a royalty based on the Publisher's net receipts**, in accordance with the following schedule: 18% of the net receipts. . . . Net receipts shall be deemed equal to gross revenues minus only returns, exchanges, discounts, and other allowances, and excluding packaging and shipping charges, and sales or excise taxes shown separately on the invoice." Compl. ¶ 30.
- *Essentials*: "The payments to each Author shall be determined by reference to a total royalty **computed as a percentage of the Publisher's Net Receipts on U.S. sales** in accordance with the following schedule: 18% of Net Receipts **for all copies of the student text** sold during the life of the edition." Compl. 31.
- *Law and Ethics*: "[Publisher] Will pay the following compensation to the Author: (a) **15 % of net paid sales** (paid sales less credits and returns of the Work in book form except as provided for in (b); (b) 7.5% of . . . (iii) **net paid sales of the Work in all other forms including, without limitation: . . . electronic, machine-readable and computerized forms**." Compl. ¶ 32.

Plaintiffs assert that this provision establishes a simple formula for all royalty calculations:

"***Royalties ($) = Royalty Rate × Net Receipts from the Sale of the Authors' Works***". According

3

to Plaintiffs this clause plainly requires Cengage to pay royalties calculated on the net selling price for all of Cengage Unlimited and all of MindTap to each author whose work is included in these products. The royalty calculations for MindTap and Cengage Unlimited, which are not based on net receipts for MindTap and Cengage Unlimited as a whole, therefore breach the contract. *See* ECF No. 42, "Opp.", at 1 ("In the case of MindTap, Cengage has decided to dock authors' royalty base up to 50% based on Cengage's unilateral determination of its own contributions to the MindTap version of the textbook"); 2 ("The contracts do not provide Cengage the ability to unilaterally reduce the net receipts use to calculate royalties."). Plaintiffs further allege that when allocating the value between the royalty and non-royalty bearing portions of MindTap, Cengage intentionally inflates the value attributed to the non-royalty portions that have "little to no market value when sold separate and apart from the textbook." Compl. at 40.

    Cengage disagrees. It argues that the contract requires that it pay royalties on the "Work" and does not include any provision requiring it to pay royalties on the net receipt from MindTap and Cengage Unlimited. Cengage also points to provisions in the contract that permit it to add royalty-free ancillary materials with textbooks, Mot. at 9-10, 12, to sell works under a subscription model, Mot. at 14, and permit Cengage discretion over format and price, Mot. at 16-18. Based on the plain language of the royalty clauses, and these surrounding provisions, Cengage contends it is clear that when it packages royalty-bearing Works with materials for which authors are not entitled to royalties, such as auxiliary materials in MindTap or the work of other authors in Cengage Unlimited, the authors are not entitled to royalties on the net receipts of the whole product.

On August 12, 2019, Plaintiffs filed a complaint based on this alleged breach of contract by Cengage, on behalf of themselves and similarly situated persons.

On December 20, 2019, Defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim, or alternatively, to strike the class allegations in the complaint pursuant to Fed. R. Civ. P. 23(d)(1)(D). ECF No. 39-41. As to MindTap, Defendant contends they are not required to pay royalties based on the net-selling receipt because the *Psychology* and *Essentials* Agreements provide that no royalties are due on ancillary materials, and the *Law and Ethics* Agreements permit allocation. As to Cengage Unlimited, Defendants contend that they have a clear right to sell by subscription model, Plaintiffs have not plausibly alleged that Cengage's allocation of net receipts from Cengage Unlimited is a breach of the agreements, and Plaintiffs challenge to the price of Cengage Unlimited is meritless. Defendants argue that the class allegations should be struck because the need to review individual contracts means that common issues will not predominate over individual ones, and there will be conflicts among the class of authors, who would in effect be vying against one another for shares of the Cengage Unlimited royalty pie.

On January 21, 2020, Plaintiffs opposed Defendant's motion, arguing in part that Defendant's motion relies on factual assertions that are not permissible at this stage of the case, that they have adequately pleaded breaches of the implied covenant of good faith and fair dealing, and that it is premature to strike the class allegations. Defendants replied on January 30, 2020, reiterating the arguments in their motion and adding that Plaintiffs' do not advance a reasonable interpretation of the contracts with regard to Cengage Unlimited.

STANDARD OF REVIEW

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (citations omitted). On a motion to dismiss for failure to state a claim, a contract integral to the complaint may be considered by the judge, who "need not accept [plaintiff's] description" of the contract, "but may look to the agreement itself." *Broder v. Cablevision Sys. Corp.,* 418 F.3d 187, 196 (2d Cir. 2005) (concluding that the "contract language . . . unambiguously foreclose[d]" plaintiff's claims).

## DISCUSSION

Plaintiffs' complaint rests on one key premise: that the royalty clauses in the publishing agreements plainly require Cengage to pay royalties based on total net receipts of MindTap and Cengage Unlimited. But, if Plaintiffs have not adequately pleaded this premise, they are without a theory for how Cengage has breached their contract and have not shown they may be entitled to relief.

Upon careful consideration, the Court concludes that Plaintiffs have not adequately pleaded that Cengage is contractually obligated to base royalties on total net receipts for MindTap and Cengage Unlimited, and therefore fail to plead a breach of contract. The Court will dismiss this claim. As to the breach of implied covenant of good faith and fair dealing, the Court holds that Plaintiffs have pleaded bad faith in relation to MindTap, but not Cengage Unlimited. The Court will therefore dismiss the claim as to Cengage Unlimited, but not MindTap. The Court will deny

the motion to strike class allegations as Defendant's arguments for doing so relate to claims that will be dismissed.

1. Breach of Contract Claims

As an initial matter the Court must consider choice of law. "In a diversity case such as this one, the choice-of-law rules of New York, the forum state, govern." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 152 (2d Cir. 2016) (citing *Krauss v. Manhattan Life Ins. Co.*, 643 F.2d 98, 100 (2d Cir. 1981)). Under New York choice-of-law rules, "where the parties agree that [a certain jurisdiction's] law controls, this is sufficient to establish choice of law." *Id.* (citing *Fed. Ins. Co. v. Am. Home Assur. Co.*, 639 F.3d 557, 566 (2d Cir. 2011)). Here, the Parties agree, for the purpose of this motion, that Massachusetts law applies to the *Psychology* and *Essentials* agreements based on a choice of law clauses therein. Mot. at 8-9, Opp., at 7 n.2. As to the *Law and Ethics* agreement, the Parties agree for purposes of this motion to apply the law of Minnesota, where the contract was entered by Defendant's predecessor in interest. Mot. at 12; Opp. at 7 n.2. The Court will therefore apply Massachusetts and Minnesota law.

Massachusetts and Minnesota law require a Plaintiff to plead the same elements to state a claim for breach of contract: 1) the existence of a contract, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages. Compare *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007) (MA) and *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (MN). There is no dispute that the first two requirements are met. Cengage's motion makes arguments as to the third and fourth. The Court concludes that the third is decisive.

The foundation of Plaintiffs' claim for relief is that the plain text of the publishing agreements requires that royalties for Mind Tap and Cengage Unlimited be calculated based on

the net receipts for those products. Plaintiffs contend that this requirement is set forth in clauses that require royalties for sales of "the Work" (*Psychology* and *Essentials*) or "copies of the student text" (*Law and Ethics*) be made based on net receipts. Plaintiffs assert these clauses require that royalties for MindTap and Cengage Unlimited be calculated based on total net receipts. The problem with Plaintiffs' interpretation is that it is inconsistent with the text of the agreements, which explicitly refer to royalties to be paid on "the Work", which is defined as the textbook itself. The plain text of the clauses do not refer to any product Cengage might sell in addition to "the Work". Nor have Plaintiffs endeavored to plead anything besides the plain text of the clause in support of their interpretation that the royalty clauses require Cengage to pay royalties on the total net receipts of MindTap and Cengage Unlimited.

Plaintiffs urge the Court that "to the extent the Parties dispute how MindTap should be characterized—*e.g.*, as a sale of an authors' work or otherwise—that is itself a factual question for which the Court should draw all reasonable inferences in favor of" Plaintiffs. Opp. at 11. The Court disagrees. "A contract is not ambiguous simply because litigants disagree about its proper interpretation. Rather, a contract . . . is considered ambiguous only when the language 'is reasonably prone to different interpretations'". *Fed. Deposit Ins. Corp. v. Singh*, 977 F.2d 18, 22 (1st Cir. 1992); *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 582 (Minn. 2010) ("The language of a contract is ambiguous if it is susceptible to two or more reasonable interpretations.") "The question of whether a contract term is ambiguous is one of law for the judge." *Fed. Deposit Ins. Corp. v. Singh*, 977 F.2d at 22; *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), review denied (Minn. July 19, 2011) ("Absent ambiguity, the interpretation of a contract is a question of law."). The Court concludes that the publishing agreements are not ambiguous on this point. The royalty clauses in the publishing agreements unambiguously define

the "Work" as the titles themselves and cannot bear Plaintiffs' reading that they literally commit Cengage to pay royalties on total net receipts of MindTap and Cengage Unlimited.

Plaintiffs' other arguments in favor of their claim do nothing to overcome this foundational deficiency in the First Amended Complaint. Because Plaintiffs have failed to plead how the publishing agreements prohibit Cengage's pricing scheme for MindTap and Cengage Unlimited, Plaintiffs have failed to plead a breach of contract. The Court therefore GRANTS Defendants' motion to dismiss the breach of contract claims.

2. Breach of Implied Covenant of Good Faith and Fair Dealing

Next, the Court turns to Plaintiffs' claims for breach of implied covenant of good faith and fair dealing. The Court concludes that Plaintiffs have pleaded a breach as to MindTap, but not Cengage Unlimited.

Under both Minnesota and Massachusetts law, the implied covenant of good faith and fair dealing is implied in every contract. *See Latson v. Plaza Home Mortg., Inc.*, 708 F.3d 324, 326 (1st Cir. 2013); *Nat'l Union Fire Ins. Co. v. Donaldson Co.*, 272 F. Supp. 3d 1099, 1109 (D. Minn. 2017). Under Minnesota law, "[a] party breaches the implied covenant when it acts in bad faith, that is, when it 'refus[es] to fulfill some duty or contractual obligation based on an ulterior motive.' A party does not act in bad faith when it exercises its legal and contractual rights." *Armas v. Fifth Third Bancorp*, 315 F. Supp. 3d 1118, 1123 (D. Minn. 2018) (citations omitted). Massachusetts law has a similar view: "In order to prevail, the plaintiff must present evidence of bad faith or an absence of good faith. Lack of good faith carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest or ill will." *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238 (1st Cir. 2013) (quotations and citations omitted). A party may breach the covenant of good faith and fair dealing without breaching any

express term of that contract. *See Fortune v. National Cash Register Co.*, 373 Mass. 96, 101 (1977); *BP Prod. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 967 (D. Minn. 2007). However, the implied covenant may not be "invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship." *Uno Restaurants, Inc. v. Bos. Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004); *LeMond Cycling, Inc. v. PTI Holding, Inc.*, No. CIV.03-5441 PAM/RLE, 2005 WL 102969, at *7 (D. Minn. Jan. 14, 2005) ("A claim for breach of the implied covenant of good faith and fair dealing must not exceed the scope of the contract.").

The decisive question here is whether Plaintiffs have pleaded a lack of good faith by Cengage. For MindTap, the Court concludes they have. For Cengage Unlimited, the Court concludes Plaintiffs have not. Plaintiffs' theory as to MindTap is that Defendant has, in exercising its discretion to determine what among net receipts from the sales of MindTap is attributable to the authors and what is attributable to Cengage-made materials, systematically undervalued authors' contributions to enrich themselves. Opp. at 8. If true, Cengage has exercised its discretion with the ulterior motive of appropriating what should go to the authors to itself. This adequately pleads bad faith as required by Massachusetts and Minnesota law.

Though Plaintiffs assert that the subscription price for Cengage Unlimited is too low, Plaintiffs have not pleaded any facts that suggest bad faith by Cengage in setting that price. Unlike with MindTap, there is no allegation that Cengage is in any way taking more of the pie than it is due, or otherwise acting with a bad faith motive. Plaintiffs seem to concede as much by not addressing this issue in their opposition.

The Court therefore concludes Plaintiffs have not pleaded a breach of the covenant of good faith and fair dealing in relation to Cengage Unlimited, but have done so as to MindTap.

10

3. Motion to Strike

Finally, the Court considers Cengage's motion to strike class allegations. It is denied.

"Rule 12(f) provides that a court may "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." However, "[m]otions to strike under Rule 12(f) are rarely successful"—particularly in the class-action context where such a motion "requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (citations omitted). "Accordingly, district courts in this Circuit have frequently found that a determination whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (collecting cases).

Cengage contends that the Court should strike the class allegations because the variation in the contract language and in the textbooks that are the subject of the contracts mean that common issues will not predominate over individual ones. Cengage also argues that Cengage Unlimited's weighted formula for royalty payments would create conflicts within the class. The Court's dismissal of the breach of contract claims and the Cengage Unlimited breach of implied covenant of good faith and fair dealing claim resolve these concerns. The Court therefore DENIES Cengage's motion to strike.

## CONCLUSION

For the reasons above, the Court GRANTS in part and DENIES in part Cengage's motion to dismiss and DENIES Cengage's motion to strike. The Parties are directed to file a joint status

report no later than 21 days after this Opinion issues regarding how they would like to proceed with the remainder of this claim.

**SO ORDERED.**

**Dated: September 29, 2020**
       **New York, New York**

                                                                                         _____

                                                                                         **ANDREW L. CARTER, JR.**

                                                                                         **United States District Judge**