# GIBSON DUNN

> The Parties' letter-motions seeking a pre-motion conference (ECF Nos. 149, 151) are GRANTED, and a telephone conference is scheduled for **Wednesday, September 28, 2022 at 2:00 p.m.** on the Court's conference line. The parties are directed to call: (866) 390-1828; access code: 380-9799, at the scheduled time.
>
> The Clerk of Court is respectfully directed to close ECF Nos. 149 and 151.
>
> SO ORDERED 09/08/22
>
> *[signature]*
> SARAH L. CAVE
> United States Magistrate Judge

September 7, 2022

VIA ECF

The Hon. Sarah L. Cave
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007-1312

Re:   *Bernstein, et al. v. Cengage Learning, Inc.*, Case No. 19-cv-7541-ALC-SLC

Your Honor:

Pursuant to Local Civil Rule 37.2 and the Court's Individual Practice Rule II.C.2, third-party Dr. Jonathan McDonald and Defendant Cengage Learning, Inc. respectfully request a pre-motion conference to discuss their anticipated motion to quash and/or defer the deposition subpoena that Plaintiffs have served on Dr. McDonald.  The parties have conferred by phone and have been unable to resolve this dispute.

Because the justification for imposing the burdens of discovery on a stranger to a dispute is weaker than it is for litigants, courts "must quash or modify" subpoenas that "subject[] a [third party] to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv); *see Breaking Media v. Jowers*, No. 21 Misc. 194 (KPF), 2021 WL 1299108, at *7 (S.D.N.Y. Apr. 7, 2021) (quashing subpoena because issuing party did not "take reasonable steps to avoid imposing an undue burden on a third party") (quotation marks omitted).  "In assessing whether the subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017) (quotation marks omitted).  "The burden is upon the party issuing the subpoena to demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Zoological Soc. of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A, 2013 WL 5652759, at *3 (W.D.N.Y. Oct. 15, 2013) (collecting cases and quashing deposition subpoena).

Here, the subpoena to Dr. McDonald would burden a non-party to obtain information that could be accessed (and has been obtained) in the normal course of party discovery—and which is relevant, if at all, to the merits, not to class certification.  Dr. McDonald is a *former* Cengage employee whose work had little relation to the allegations in this lawsuit.  Requiring him to take days off of his new job to both prepare for, and testify in, his first deposition before

**GIBSON DUNN**

September 7, 2022
Page 2

class certification would serve no purpose, contravene the Court's express instruction to the parties prioritize the discovery needed for class certification, and unduly burden him.  Dr. McDonald has provided a declaration with all the relevant information he remembers:  He recalls that Cengage considered changes to its Digital Royalty Allocation that Dr. McDonald proposed, but the company rejected the proposal because it would have complicated the royalty methodology and disrupted its author relationships.  The Court should quash the subpoena, but at a minimum, it should defer this discovery until after the Court decides their class certification motion.  At that point, the parties can reassess whether it is truly necessary (and proportionate) to burden Dr. McDonald with a deposition.

### I. Plaintiffs Are Not Heeding the Court's Directive to Focus on Discovery Necessary for Class Certification.

To begin, any information Dr. McDonald could supply only would be relevant—if at all—to the merits, not to class certification.  Because of the impact of a decision on class certification and the need to resolve this question as promptly as possible, the Court "encouraged [the parties] to prioritize the exchange of information needed to brief and oppose class certification," rather than engaging in full-blown merits discovery.  Dkt. 128 ¶ 10 (Case Management Order).  This was a conspicuous directive, as the parties had disputed this issue in the scheduling order, but the Court revised the draft to include this explicit instruction.  *See* Dkt. 127-1 ¶ 10; Dkt. 128 ¶ 10.

For the last several months, Plaintiffs have flouted this directive.  They have sought broad custodial discovery, served 352 written discovery requests (with multiple sub-parts), pursued several dozen informal follow-up questions via written correspondence, served three non-party subpoenas (including a deposition of a third-party consultant), and noticed a Rule 30(b)(6) deposition with 49 distinct categories (and 135 total sub-parts).[1]  Cengage has devoted significant effort responding to these burdensome demands, and it has not brought these issues to the Court's attention previously.  But it must object to the latest attempt to burden its former employee with a deposition that has nothing to do with class certification.

In particular, the information Plaintiffs seek from Dr. McDonald is information about the *merits*—focused on Plaintiffs' contention that Cengage breached the covenant of "good faith and fair dealing" in allocating royalties.  *See, e.g.*, Dkt. 121 ¶ 66.  Pursuing his deposition now violates the Court's instruction to prioritize the information needed for class certification.  In addition, it would subject a third party to the burden of testifying when his testimony

---

[1]  Plaintiffs served the last of these written discovery requests—296 requests for admission, plus 11 new interrogatories—late at night on the Friday before Labor Day weekend.  Plaintiffs have made no attempt to limit or narrow discovery to focus on class certification issues, instead insisting repeatedly that "everything" is relevant to class certification.

ultimately may prove unnecessary if no class is certified. Dr. McDonald left Cengage two years ago, and has had two jobs since then. Ex. A (McDonald Decl.) ¶ 8. A deposition would impose a substantial burden on him (he would have to miss multiple work days at his current job to both prepare for and attend the deposition), and on his current employer—both strangers to this dispute. *Id.* ¶ 10. There is no need to burden a third party, who left his position at Cengage two years ago, at this stage. The parties can wait until after class certification to determine whether deposing a former employee is really necessary.

> **II.   Plaintiffs Should Exhaust Party Discovery Before Burdening a Former Employee.**

Nor does Dr. McDonald possess any information that Plaintiffs cannot obtain in the normal course of party discovery. Dr. McDonald is a *former* Cengage technical product manager, who focused on building the software features of products-in-development such as "MindTap for Math" (which was never released). Cengage also assigned one small task to him, due to his mathematics background, somewhat afield of his usual work: to analyze proposed corrections and changes to Cengage's system for Digital Royalty Allocation. Ex. A ¶ 3. He worked with other Cengage employees and third party AlixPartners (which has already produced documents and whose director has been deposed) in performing his analysis. *Id.* ¶¶ 3–4. But Cengage ultimately decided *not* to implement his proposed changes, because "[c]hanging the methodology would have been complicated, would have required data that Cengage did not have, and Cengage did not want to disrupt its author relationships." *Id.* ¶ 6. That is the extent of Dr. McDonald's recollection. *Id.* ¶ 9.

In the parties' meet-and-confer discussions about the subpoena, Plaintiffs insisted that they nonetheless want to depose Dr. McDonald to "confirm" this information. But they never have explained why Dr. McDonald would have any more information about Cengage's decision-making than AlixPartners or Cengage itself. In fact, he would have *less*. Dr. McDonald's role was technical, analytical, and mathematical; he was not a decision-maker. Because information about how Cengage decided how to allocate royalties "could easily have been requested of the [defendant] during the normal course of discovery," "this subpoena [is] unduly burdensome." *Zoological Society of Buffalo*, 2013 WL 5652759, at *3.

The Court should quash the subpoena to Dr. McDonald. At a minimum, it should defer this deposition to be revisited after a decision on Plaintiffs' motion for class certification.

Sincerely,

Christopher Chorba

cc: All Counsel of Record (via ECF)