UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS BERNSTEIN, ELAINE INGULLI, TERRY HALBERT, EDWARD ROY, LOUIS PENNER, and ROSS PARKE, As Personal Representative of the Estate of ALISON CLARKE-STEWART, on Behalf of Themselves and Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>-against-<br><br>CENGAGE LEARNING, INC.,<br><br>*Defendant.* | 19-cv-07541 (ALC) (SLC)<br><br><u>OPINION</u> |

**ANDREW L. CARTER, JR., District Judge:**

Pending before the Court is Magistrate Judge Cave's Report and Recommendation ("R&R"), ECF No. 260, regarding Plaintiffs' motion for class certification and appointment of class representatives and class counsel. ECF No. 169 (the "Class Motion"). Plaintiffs Douglas Bernstein, Edward Roy, Louis Penner, and Ross Parke,[1] on behalf of themselves and others similarly situated (collectively, "Plaintiffs") filed the instant action against Defendant Cengage Learning, Inc. ("Cengage") for breach of contract. Plaintiffs allege that Cengage violated the terms of its publishing agreements (the "Contracts") by failing to pay authors royalties for Defendant's MindTap and Cengage Unlimited ("CU") products. ECF No. 1, Compl. at ¶¶ 54–59. Magistrate Judge Cave recommended Plaintiffs' motion for class certification and appointment of class representatives and class counsel be granted, with certain revisions to the definitions of the two proposed classes. Defendant has filed objections to the Report's determinations that

---

[1] Mr. Parke is a personal representative of the Estate of Alison Clarke-Stewart.

1

Plaintiffs have satisfied Rule 23(b)(3) predominance and superiority, as well as the commonality requirements of Rule 23(a)(2) and adequacy of Rule 23(a)(4). ECF No. 267. For the reasons that follow, I adopt the R&R in full.

## BACKGROUND

I assume the parties' familiarity with the factual background and procedural history of this case as laid out in Judge Cave's R&R. Of particular relevance, Cengage uses a Digital Royalty Allocation Framework ("DRA Framework") to determine the royalty base used to pay royalties on MindTap sales (a digital textbook with supplemental materials). Plaintiffs seek certification of two classes:

- MindTap Class: Authors of works who entered into a publishing agreement with Cengage Learning, Inc., or one of its predecessors-in-interest, that provides that the agreement will be governed by New York or Massachusetts law, and whose works have been sold on the MindTap platform and assigned a [DRA] of 50 percent or 75 percent [the "Proposed MindTap Class"].
- CU Class: Authors of royalty-bearing works who entered a publishing agreement with Cengage Learning, Inc., or one of its predecessors-in-interest, that provides that the agreement will be governed by New York or Massachusetts law, and whose works have been used on Cengage Unlimited [the "Proposed CU Class"].

ECF No. 169 at 1. Plaintiffs allege Defendants breached the implied covenant of good faith and fair dealing under New York and Massachusetts law.

## JUDGE CAVE'S R&R

Magistrate Judge Cave recommended that Plaintiffs' motion for class certification and appointment of class representatives and class counsel be granted, with certain revisions to the definitions of the two proposed classes. R&R.

### a. Rule 23(a)(2) Commonality & Typicality

Judge Cave found that Plaintiffs properly pleaded three issues common to the Proposed Classes and capable of resolution through common proof: whether Defendant's DRA Framework

and CU Methodology (1) are arbitrary; (2) "systematically undervalue authors' contributions to MindTap"; and (3) "were enacted and promulgated with the ulterior motive of appropriating to Cengage what should go to authors." *Id.* at 23–28; ECF No. 171 at 23. Cengage argued that these questions are not subject to classwide proof and instead require an individualized analysis. ECF No. 186 at 16, 17–18.

First, Judge Cave found each member of the Proposed Classes was undisputedly awarded either 50% or 75% DRA under the DRA Framework, and Plaintiffs do not dispute whether 50% or 75% was the correct DRA for each member. R&R at 24. Instead, Plaintiffs' expert Professor Daniel Spulber opined that Cengage undervalued MindTap authors' textbooks, and if the textbooks had been properly valued, authors assigned 50% would receive a corrected DRA of at least 81.6%, and those assigned a 75% DRA would receive a DRA of at least 90.8%. ECF No. 172-5 ("Spulber Rpt.") at ¶¶ 153–154. Second, Judge Cave found "Cengage owed a duty of good faith to all authors in calculating royalties" to both Proposed Classes. R&R at 25. She found that to determine motive, both New York and Massachusetts law requires the Court to "'focus on the subjective, specifically on knowing and purposeful misbehavior' by Cengage, whose purpose in adopting and implementing the DRA Framework was common to all members of the [Proposed Classes]." *Id.* at 26 (quoting *Bank of Am., N.A. v. Prestige Imps.*, 75 Mass. App. Ct. 741, 754–55 (App. Ct. 2009)). Judge Cave rejected Cengage's argument that motive must be proved on an author-by-author basis. Third, Judge Cave determined that the question at the pleading stage was whether Plaintiffs had alleged a workable classwide model for calculating damages for the Proposed Classes, not its accuracy or credibility. R&R at 26–27. It was sufficient for Plaintiffs to propose Professor Spulber's classwide methodology for damages, "the difference between what

3

the authors should have been paid under the Corrected DRA . . . and what the authors <u>were</u> paid." *Id.* (emphasis in original).

### b. Rule 23(b)(3) Predominance & Superiority

Cengage set forth seven issues that it claimed would predominate over any common issues. ECF No. 186 at 24–29. Judge Cave disagreed and found "[n]one of these issues predominates over the common issues Plaintiffs have described for the Proposed Classes." R&R at 35–41.

### c. Rule 23(a)(4) Adequacy

First, Judge Cave found that there was no conflict between Plaintiffs (which did not contribute to Supplemental Materials) and authors who did contribute to Supplemental Materials, because Cengage still applied a 50% valuation to the eTextbook portion of the royalty calculation. R&R at 31. Second, Plaintiffs were adequate representatives because they "exhibited a firm understanding of the nature of the claims of the Proposed Classes" in their depositions and testified about their efforts to prosecute the case. *Id.* at 31–32.

### d. Ascertainability

Plaintiffs argue that the Proposed Classes satisfy the ascertainability requirement by using the following objective criteria to define membership: "1) the author's work must have been sold on MindTap or used on CU, 2) the work must have a DRA of 50 or 75 (for MindTap) . . . , and 3) the author's publishing agreement must have a New York or Massachusetts choice-of-law clause." ECF No. 171 at 22. Judge Cave determined that because Cengage maintains detailed records on sales and DRAs, and the Contracts state whether New York or Massachusetts law governs, the Proposed Classes are ascertainable. R&R at 32–33.

**DEFENDANT'S OBJECTIONS**

4

Defendant stated "it objects to the entire Report," but only filed specific objections to the Report's determinations that Plaintiffs have satisfied Rule 23(b)(3) predominance and superiority, as well as the commonality requirements of Rule 23(a)(2) and adequacy of Rule 23(a)(4). ECF No. 267.

### a.  Rule 23(a)(2) Commonality & Typicality

In a footnote, Defendant briefly challenges Judge Cave's conclusion that Plaintiffs met the commonality requirement of Rule 23(a)(2). *Id.* at 21 n.9. This is because, according to Defendant, to answer common questions of the undervaluation of the authors' works requires individualized proof regarding contract terms, course of dealing, and product managers' discretion. *Id.*

### b.  Rule 23(b)(3) Predominance & Superiority

Defendant cites to *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89 (2d Cir. 2007) for the contention that this Court is required to analyze "both the contracts' language and the parties' course of dealing to determine what royalties authors reasonably expected and whether Cengage's payments met those expectations." ECF No. 267 at 14. Cengage claims predominance has not been established because an individualized inquiry of each contract and course of dealing is required to determine which authors were injured. *Id.* at 23.

Defendant argues that the Contracts are not materially identical, or even substantially similar, *id.* at 15, partially due to the fact that the contracts were individually negotiated, *id.* at 9. Some contracts "expressly permit Cengage to reduce or otherwise alter royalties for revenue generated through specific sales channels or sales of certain kinds of products" such as CU and MindTap. *Id.* at 9–10. These provisions "are *material* because they inform what share of total

5

MindTap or CU revenue an author can reasonably expect to receive." *Id.* at 17. Of the 24 contracts Plaintiffs examined in their class certification motion, at least 17 contain provisions that permit the reduction of royalties. *Id.* at 17–19.

Next, Defendant argues that the varying course of dealing also bars class certification. *Id.* at 20. If Defendant paid authors at a rate that equaled or exceeded their reasonable expectations, they contend those authors suffered no injury or breach of the implied covenant. *Id.* at 20–21. Cengage also argued that it did not assign 50% DRAs to all authors who did not contribute to ancillary materials, ECF No. 171 at 7, but rather product managers assigned DRAs based on an individualized inquiry of many factors. *Id.* at 21. Defendant disagrees with Judge Cave's decision to certify the Proposed Classes because it contends some members of the Proposed Classes suffered no damages. *Id.* Defendant alleges authors with a "corrected" DRA higher than 75% suffered no injury, so Plaintiffs cannot show classwide injury. *Id.* at 21-22.

Cengage contends Judge Cave erred in finding that Plaintiffs met their burden to show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Defendant posits that Plaintiffs must show Professor Spulber's models are accurate. ECF No. 267 at 24–25.

Cengage also argues that it "may be liable for breach only if it acted without good faith *and* the royalties it paid to a given author represent a lower share of MindTap and/or CU revenue than what the author reasonably expected to receive." ECF No. 267 at 14. However, this argument was not raised before Judge Cave.

Finally, Defendant alleges the superiority requirement has not been met because Plaintiffs have sufficient economic incentive to pursue their claims individually. *Id.* at 27, citing *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 129 (S.D.N.Y. 1997). Defendant

claims "Plaintiffs' efforts to streamline the class will increase, rather than reduce, the manageability burdens on the Court" because determining class membership will "require the close analysis of all of each putative member's contracts for thousands of works." *Id.* at 27.

### c. Rule 23(a)(4) Adequacy

Defendant argues the proposed class representatives failed to meet the adequacy required under Rule 23(a)(4) because "Plaintiffs Bernstein, Roy, Penner, and Parke display the same 'alarming unfamiliarity' with the issues and near-total abdication of their responsibilities." *Id.* at 28–29.

## LEGAL STANDARDS

### I. Reviewing the R&R

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made" by a magistrate judge in an R&R. 28 U.S.C. § 636(b)(1). Where a party timely and specifically objects, the court conducts a *de novo* review of the contested portions of the R&R. "However, 'when a party makes only conclusory or general objections, or simply reiterates his original arguments,' the court reviews the report and recommendation strictly for clear error." *Kartm v. N.Y.C. Health & Hosps. Corp.*, No. 17-CIV-6888 (AT) (OTW), 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020), *aff'd sub nom. Karim v. N.Y.C. Health & Hosps. Corp.*, 834 F. App'x 651 (2d Cir. 2021) (quoting *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989 (NSR) (PED), 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014))." "In addition, 'new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.'" *Id.* at *3 (quoting *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771 (LAP) (KNF), at *5 (S.D.N.Y. May 30, 2014)).

# DISCUSSION

### I. Rule 23

Rule 23 of the Federal Rules of Civil Procedure governs class certification. That is, plaintiffs must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). To meet the requirements of Rule 23(a), "plaintiffs in the proposed class must demonstrate that they satisfy four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007).

In addition to the requirements of Rule 23(a), plaintiffs must demonstrate that a class is maintainable under Rule 23(b). Plaintiffs move for certification pursuant to Rule 23(b)(3). Under Rule 23(b)(3), the court must decide whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification . . . must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

#### a. Rule 23(a)(1) Numerosity

The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class

make use of the class action appropriate. *Cent. States*, 504 F.3d at 244–45. Although, there is no bright line rule setting a requisite number of class members for certification, "numerosity is presumed for classes larger than forty members." *Pa. Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014).

Plaintiffs have established that potential class members satisfy numerosity under Rule 23. Defendant does not challenge this requirement. Accordingly, the Court finds that Plaintiffs have met their burden under Rule 23(a)'s numerosity requirement.

### b. Rule 23(a)(2) Commonality & Typicality

"The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact," *Cent. States*, 504 F.3d at 245, "truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Plaintiffs need only "demonstrate that the class members 'have suffered the same injury.'" *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks and alterations omitted). "The commonality requirement may be met when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'" *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).

Typicality "requires that the claims of the class representatives be typical of those of the class." *Cent. States*, 504 F.3d at 245. A putative class satisfies this requirement "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* "Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). But "a representative may satisfy the typicality requirement even though that party may

later be barred from recovery by a defense particular to him that would not impact other class members." *In re Natural Gas Commodities Lit.*, 231 F.R.D. 171, 184 (S.D.N.Y. 2005) (quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 95 (S.D.N.Y. 1998)). Defendant does not contest that Plaintiffs have shown typicality.

Plaintiffs easily satisfy the commonality requirement. The Court agrees that Plaintiffs properly presented three common questions for the Proposed Classes. R&R at 23–28. Judge Cave was correct in determining "Cengage owed a duty of good faith to all authors in calculating royalties" to the Proposed Classes. R&R at 25. Plaintiffs do not challenge whether Cengage correctly assigned an author a DRA. Rather, at issue here is whether Cengage undervalued the authors' textbooks and the DRA Framework was arbitrary, and these questions can be resolved by common proof. *Id.* at 24. Plaintiffs alleged a workable classwide model for calculating damages for the Proposed Classes. R&R at 26–27.

This Court has held that Plaintiffs must show that Cengage acted with an "ulterior motive" or otherwise in bad faith "in exercising its discretion to determine what among net receipts from the sales of" MindTap and CU "is attributable to the authors" to show breach. *Bernstein v. Cengage Learning, Inc.*, No. 19-CV-07541 (ALC) (SLC), 2020 WL 5819862, at *5–6 (S.D.N.Y. Sept. 29, 2020) (*Bernstein I*) (MindTap); *Bernstein v. Cengage Learning, Inc.*, No. 19-CV-07541 (ALC) (SLC), 2021 WL 4441509, at *4 (S.D.N.Y. Sept. 28, 2021) (*Bernstein II*) (CU). Judge Cave was correct in determining the question of ulterior motive may be answered by examining "statements by and testimony from Cengage's employees" and opinions of the parties' experts. R&R at 25. In its objections, Cengage does not dispute this common question will be answered with common proof.

Defendants allege that in order to show a breach, the authors must show that Cengage, in bad faith, underpaid authors, and 2) that Cengage has not accidentally overpaid authors to offset the underpayment. But this argument was not presented to Judge Cave. Therefore, the Court declines to consider it.

Accordingly, the Court agrees with Judge Cave that Plaintiffs have satisfied the commonality requirement under Rule 23(a).

### c. Rule 23(b)(3) Predominance & Superiority

Rule 23(b)(3) requires Plaintiffs to show that common questions predominate over individualized questions and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, a court examines Rule 23(b)(3)'s nonexclusive list of factors for consideration. The manageability of a class action is the most important of these factors. Fed. R. Civ. P. 23(b)(3)(D). "The predominance requirement of Rule 23(b)(3) tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiffs must demonstrate that "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [that] these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). Predominance does not require the absence of individualized damages, but plaintiffs' damages methodology "must actually measure damages that result from the class's asserted theory of injury." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015).

Defendant challenges Judge Cave's finding of predominance and insist that because the Contracts are not materially similar, certification is precluded. Defendant makes the case that because each Contract has different provisions, these issues predominate over the common questions. But "the Contracts all contain the same or substantially similar royalty provision: Cengage's promise to pay authors royalties based on the net receipts from the sale of their works." R&R at 35–36. Cengage has discretion to determine what percentage of royalties the authors are entitled to, but it is barred from exercising that discretion in bad faith. R&R 260 at 36. *See also Bernstein I*, 2020 WL 5819862, at *5–6 (MindTap); *Bernstein II*, 2021 WL 4441509, at *4 (CU). The varying provisions Cengage cites to regard royalty *rate*. Plaintiffs challenge Defendant's policies for determining Plaintiffs' royalty *base* for MindTap and CU sales. The "[d]ifferences in the royalty rate between Contracts . . . are not material to Plaintiffs' challenge to the way Cengage has calculated the royalty base" for MindTap and CU. R&R at 36. *See In re U.S. Foodservice Inc. Pricing Litg.*, 729 F.3d 108, 124 (2d Cir. 2013) (affirming certification when different terms were immaterial to the issues presented). Neither are provisions Defendant cites to that permit Cengage to deduct expenses from an author's royalties material to the question of whether Cengage correctly calculated the royalty rate.

Defendant claims varying course of dealing also bars class certification. ECF No. 267 at 20. But Judge Cave correctly found that "all authors reasonably shared the same expectation under the law of New York and Massachusetts: that Cengage would not act arbitrarily, irrationally, or malevolently in determining the amount of net receipts on which the royalties would be paid." R&R at 36–37. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 680 (S.D. Fla. 2011) ("a breach of the duty [of] good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct.");

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 156 (D.S.C. 2018) (rejecting defendant's assertion that "resolution of the implied covenant claim will require examination of each class member['s] subjective expectations").

Next, Defendant reads *TransUnion LLC v. Ramirez* to hold that a class may only be certified if every class member is injured, 141 S. Ct. 2190, 2208 (2021), and incorrectly contends Plaintiffs cannot show classwide injury because the Proposed Classes may include uninjured members. This is not the law. The *Denney* court decided that "[o]nce it is ascertained that there is a named plaintiff with the requisite standing, [ ] there is no requirement that the members of the class also proffer such evidence." 443 F.3d at 263–64 (quotation marks omitted); *see also Hyland v. Navient Corp.*, 48 F.4th 110, 117, 118 n.1 (2d Cir. 2022) (same). The reasoning of the *In re AXA Equitable Life Ins. Co. COI Litig.* court is instructive. There, a defendant similarly argued the class could not be "certified because at least some of the entitlement holders lack Article III standing." No. 16-CV-740 (JMF), 2023 WL 199284, at *1 (S.D.N.Y. Jan. 17, 2023). Judge Jesse M. Furman disagreed:

> That premise is wrong. In *TransUnion*, the Supreme Court held that "[e]very class member must have Article III standing in order to recover individual damages." 141 S. Ct. at 2208 (emphasis added). But the Court explicitly declined to "address the distinct question whether every class member must demonstrate standing before a court certifies a class." *Id.* at 2208 n.4. Thus, *TransUnion* did not alter the well-established law in this Circuit — reaffirmed by the Court of Appeals [] — that standing in a class action "is satisfied so long as at least one named plaintiff can demonstrate the requisite injury," *Hyland*, 48 F.4th at 117, and that "each member of a class" need not 'submit evidence of personal standing' to certify a class that meets Rule 23's requirements, *Denney*, 443 F.3d 263.

*Id.* (cleaned up).

The same is true here. Plaintiffs have shown that "at least one named plaintiff can demonstrate the requisite injury," *Hyland*, 48 F.4th at 117, and therefore standing is satisfied.

13

Defendant provides one example of an author who was allegedly overpaid royalties, which may offset any underpayment. ECF No. 267 at 17–18, 20–21. But it is "'well-established' in this Circuit that 'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3).'" *Roach*, 778 F.3d at 405 (quoting *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010)). Plaintiffs have provided Professor Spulber's model to calculate classwide damages, and that may be used to calculate any offsets to overpayment of royalties. As such, alleged overpayment of royalties does not bar the certification of the Proposed Classes.

Regardless of whether certain class members were overpaid by Defendant, they still suffered injury from the breach of the covenant. This is because "[u]nder New York law, parties to an express contract are bound by an implied duty of good faith, 'but breach of that duty is merely a breach of the underlying contract.'" *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992) (citation omitted). *See also Bos. Light Source, Inc. v. Axis Lighting, Inc.*, No. 17-CV-10996-NMG, 2017 WL 6543868, at *4 (D. Mass. Nov. 13, 2017) (applying Massachusetts law). In New York, plaintiffs may be awarded nominal damages on their cause of action alleging breach of contract, despite being unable to demonstrate actual damages as a result of defendant's breach of contract. *Ross v. Sherman*, 95 A.D.3d 1100, 1100, 944 N.Y.S.2d 620, 621 (2012). *See also Bos. Prop. Exch. Transfer Co. v. Iantosca*, 720 F.3d 1, 11 (1st Cir. 2013) ("a plaintiff is entitled to at least nominal damages upon proving a breach [of contract]."). Therefore, even overpaid class members were injured.

Rule 23(b)(3) requires Plaintiffs establish that damages are capable of measurement on a classwide basis. The question at the pleading stage is whether Plaintiffs had alleged a workable model, not its accuracy or credibility. At this stage, "the district court must focus on the

14

principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595, (1993). Plaintiffs' proposed classwide methodology for calculating damages for the Proposed Classes is therefore sufficient, and a jury will decide whether to accept or reject Professor Spulber's calculations. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).

      Finally, Cengage argues Plaintiffs have not shown a class action is the superior method of adjudication because authors have sufficient monetary incentive to pursue their own claims. Defendant points to the existence of two individual suits against Cengage. ECF No. 267 at 27. But the mere existence of a handful of individual suits does not defeat superiority. *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 143 (S.D.N.Y. 2014) (Defendants' superiority argument is meritless because "a significant advantage of the class action form is that it permits recovery by smaller stakeholders, for whom it may not be sensible to maintain an individual action."). Judge Cave was correct in finding "[e]ach of the four factors under Rule 23(b)(3) weigh in favor of a finding of superiority here" from an efficiency and cost standpoint, particularly after over four years of litigation. R&R at 42. *See also In re U.S. Foodservice*, 729 F.3d at 130. Defendant argues "that individual questions render class litigation unmanageable," but "denying certification on that ground alone 'is disfavored and should be the exception rather than the rule[.]'" *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16-CV-740 (JMF), 2020 WL 4694172, at *14 (S.D.N.Y. Aug. 13, 2020) (quoting *In re Petrobras Sec.*, 862 F.3d 250, 268 (2d Cir. 2017)). This Court finds that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiffs have established predominance and superiority.

### d. Rule 23(a)(4) Adequacy

Adequacy requires that the class representatives "will fairly and adequately protect the interests of the class." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 267 (2d Cir. 2006) (internal quotation marks omitted). To determine adequacy, courts evaluate "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). "Class certification may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1077–78 (2d Cir. 1995) (quotation marks and alterations omitted). Courts may also consider "the honesty and trustworthiness of the named plaintiff." *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998).

Defendant alleges Professors Bernstein, Penner, Roy, and Parke are inadequate class representatives. Yet Defendant has not shown that "the class representatives ha[ve] so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys" to warrant denial. *Maywalt*, 67 F.3d at 1077–78 (citation omitted). Plaintiffs "showed an understanding of the basic facts that gave rise to this action as well the basic nature of the claims in the case," and "[m]ost importantly, [they] evinced an understanding of how a class action works." *Hawaii Structural Ironworkers Pension Tr. Fund, Inc. v. AMC Ent. Holdings, Inc.*, 338 F.R.D. 205, 213 (S.D.N.Y. 2021). The deposition transcripts, ECF Nos. 196-5, 196-7, 196-8,

16

demonstrate the Professors are active participants in the litigation and "exhibited a firm understanding of the nature of the claims of the Proposed Classes." R&R at 31. The Rule 23(a)(4) adequacy requirement is therefore satisfied.

### e. Ascertainability

The Second Circuit recognizes the implied requirement of ascertainability when deciding to certify a putative class. Ascertainability "demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017) (internal quotation marks omitted). "A class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 264 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015). Defendant does not contest ascertainability, and the Court finds Plaintiffs have met this requirement.

## CONCLUSION

I have reviewed *de novo* the contested portions of the R&R and the remainder for clear error. For the reasons provided above, I adopt Magistrate Judge Cave's thorough and well-reasoned R&R in full, granting Plaintiffs' motion for class certification and appointment of class representatives and class counsel. ECF No. 169.

**SO ORDERED.**

**Dated: September 25, 2023**
    **New York, New York**

                                                        **ANDREW L. CARTER, JR.**
                                                        **United States District Judge**